UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**Wendell D. Jackson,**

    **Plaintiff,**

**-v-**          **Case No. C2-07-811**
           **JUDGE SMITH**
           **Magistrate Judge Kemp**

**City of Columbus Police Department,** *et al.***,**

    **Defendants.**

## OPINION AND ORDER

Plaintiff filed this action on August 16, 2007 (Doc. 2). Defendants then moved to dismiss on November 14, 2007 (Doc. 4). On December 26, 2007, Plaintiff filed a Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 8). Thereafter, on January 7, 2008, Defendants filed a Reply to Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss (Doc. 9). Defendants move to dismiss all Counts of Plaintiff's Complaint. This Motion is now ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' Motion to Dismiss.

### I. BACKGROUND

For purposes of ruling on Defendants' Motion to Dismiss, the Court accepts as true the well-pleaded facts set forth in the Complaint (Doc. 2).

Plaintiff, Wendell D. Jackson, is a resident of Columbus, Ohio. Plaintiff began serving as a patrol officer for the City of Columbus Police Department on June 26, 2000. Plaintiff claims he

was wrongfully terminated on November 13, 2003, following his arrest. Mr. Jackson's termination stems from an investigation conducted by Defendants Sergeant Gary Mathias and Sergeant David Griffith, both employed by the City of Columbus Police Department.

Plaintiff alleges as a direct and proximate result of the defendant officers' actions, he suffered the following injuries and damages: (a) violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable search and seizure of his person, (b) violation of his constitutional right against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution, (c) loss of his physical liberty, (d) pain and suffering and emotional trauma and suffering, and (e) loss of his employment. (Compl. ¶ 47).

Plaintiff's claims stem from an investigation led by the Defendants. A central figure in the investigation was Gary Hughes ("Hughes") who first met Plaintiff in April of 2001. Hughes indicated to Plaintiff that he could obtain carpet at substantially discounted prices and made significant profit from selling and installing such carpeting in the homes of private individuals. Hughes needed investors, and Plaintiff was persuaded to invest in the operation.

Later Plaintiff was in the process of home renovations, and he wanted to acquire carpeting for his basement. Plaintiff insisted that Hughes either return the money that Plaintiff had invested or provide Plaintiff with carpeting equal to the value of the investment. Plaintiff alleges, following this proposal, Hughes contacted his probation officer and indicated that Plaintiff had threatened him with bodily harm and that Plaintiff was willing to accept stolen property from Hughes. Consequently, Defendants gave Hughes a tape recorder for purposes of recording conversations between Hughes and the Plaintiff.

The Complaint states Hughes "cut and spliced" portions of his conversations with Plaintiff to make it appear that Plaintiff was predisposed to receiving stolen property. Defendants continued their investigation even though they knew Hughes was a convicted felon, the tape recordings were defective, and Plaintiff had clearly indicated that he was not predisposed to receiving stolen property.

According to Plaintiff's Complaint, the Defendants placed hidden microphones on Hughes and Hughes's associate to record conversations with Plaintiff and used a surveillance camera to record images of the carpet delivery. Hughes was supposed to have represented to Plaintiff that the carpet was stolen, but, instead, Hughes expressed that he "bought" the carpet from Stone Mountain. In addition, following the delivery and Plaintiff's acceptance of the carpet, Hughes can be heard on his associate's tape stating that he regretted setting Plaintiff up in that manner. Within hours of the delivery of the carpet, Plaintiff reported to work and was arrested and detained.

Further, Plaintiff asserts Defendant Mathias transcribed the audio and video tapes. According to the Complaint, Defendant Mathias transcribed the word "bought" as "brought" and claimed he could not hear Hughes's reference to "Stone Mountain." Following Plaintiff's arrest he was terminated immediately and subsequently indicted by a Grand Jury in Franklin County for one count of receiving stolen property. At trial, the jury found Mr. Jackson not guilty on September 16, 2005.

Plaintiff then initiated this case on August 16, 2007, asserting the following claims: violation of 42 U.S.C § 1983, entrapment, malicious prosecution, use of coerced statements, and infliction of emotional distress.[1]

## II. RULE 12(b)(6) STANDARD

When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the amended complaint as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983). A 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it. *Roth Steel Prods.*, 705 F.2d at 155. The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim. Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief. *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978). Rule 12 (b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure which provides that a pleading for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles Alan Wright & Arthur R. Miller,

---

[1] Plaintiff makes an inference to a case filed *pro se* in Franklin County Common Pleas Court on September 14, 2006, arising out of the same operative facts as this matter. (Pl.'s Mem. in Opp. at 4). However, no further information concerning this earlier case has been provided to this Court.

*Federal Practice and Procedure* § 1356, at 296 (2d ed. 1990). The moving party is entitled to relief only when the complaint fails to meet this liberal standard. *Id.*

Although the court must apply a liberal construction of the complaint in favor of the party opposing the motion to dismiss, a court will not accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *See Blackburn v. Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S. Ct. 1955, 1964-65 (2007).[2] A plaintiff's obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. *See LULAC v. Bredesen*, 2007 U.S. App. LEXIS 20556 at *3-4 (6th Cir. 2007) *(citing Bell Atlantic Corp. v. Twombly*, 127 S. Ct. at 1964-65). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. *Id.* To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. *Id.*

### III. DISCUSSION

**A.    Counts I, II, & V - Equal protection of the laws secured by the Fourteenth Amendment to the Constitution and enforced through 42 U.S.C. § 1983.**

Section 1983 authorizes anyone deprived of his federal constitutional or statutory rights by state officials to bring a civil action for damages against such officials. 42 U.S.C. § 1983.

---

[2] In this recent *Bell Atlantic Corp.* case, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson*, providing that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). *See Bell Atlantic Corp.*, 127 S.Ct. at 1969 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten.").

Plaintiff alleges three separate § 1983 claims. Count I states, "Defendants' actions have denied Plaintiff's right to equal protection of the laws as secured by the Fourteenth Amendment to the Constitution of the United States and enforced through 42 U.S.C. § 1983." (Compl. ¶ 51). Counts II and V address the individual Defendants. Count II alleges a § 1983 violation by Defendants Mathias and Griffith. Count V states that the City of Columbus Police Department developed and maintained policies or customs with a deliberate indifference to constitutional rights, and as a derivative of Defendants' actions, the City violated § 1983.[3]

Defendants argue that Plaintiff's § 1983 claims are barred by the statute of limitations. The Supreme Court has held that § 1983 claims are best characterized as tort actions for the recovery of damages for personal injury, and that federal courts must borrow the statute of limitations governing personal injury actions from the state where the § 1983 action was brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). If a state has more than one statute of limitations for personal injuries, the state's residual or general statute of limitations governing personal injury actions is applied to all § 1983 actions brought in that state. *Owens v. Okure*, 488 U.S. 235 (1989). This Court has held that a two-year statute of limitations applies to § 1983 claims in Ohio. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (*citing Browning v. Pendleton*, 869 F.2d 989 (6th Cir. 1989) (en banc)). This two year statute of limitations for § 1983 claims is not in dispute.

The Supreme Court recently made clear that federal law determines when the statute of limitations for a civil rights action begins to run. *Wallace v. Kato*, No. 05-1240, --- U.S. ----, ----,

---

[3] Though Plaintiff fails to specifically describe what constitutional violation the individual Defendants committed, it is inferred that it is also an equal protection claim as asserted in Count I.

127 S.Ct. 1091, 1095 (Feb. 21, 2007). "Under those principles, it is 'the standard rule that [accrual occurs] when the plaintiff has complete and present cause of action.'" *Wallace*, 127 S.Ct. at 1095 (*quoting Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997)). This occurs "when 'the plaintiff can file suit and obtain relief.'" *Id.* (*quoting Bay Area Laundry*, 522 U.S. at 201, 118 S.Ct. 542).

The Sixth Circuit Court of Appeals has previously stated that "[u]nder federal law, as developed in this Circuit, the statute of limitations period begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Ruff v. Runyon*, 258 F.3d 498, 500-01 (6th Cir. 2001); *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984). Stated differently, "[i]n determining when the cause of action accrues in § 1983 cases, we look to the event that should have alerted the typical lay person to protect his or her rights." *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003). The inquiry, therefore, asks when the harm in question occurred, guided by the principle that "[a] plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273.

Defendants argue Plaintiff knew of injury on November 13, 2003, and, therefore, had two years to file a complaint and failed to do so. Plaintiff argues that the limitations period did not begin to run on his federal claims until September 25, 2005, when he was acquitted of felony charges for receiving stolen property. (Pl.'s Mem. in Opp. at 3). The sole basis for Plaintiff's argument is that he was subjected to a series of deprivations of his constitutionally guaranteed rights. *Id.* Plaintiff, however does not provide any further description of what constitutes the "series of deprivations." The Court is left to attempt to construct Plaintiff's arguments for him.

For example, Plaintiff's only specific allegation in relation to Defendant officers is "that the individual police officer defendants made an unreasonable seizure of the person of Wendell D. Jackson, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution . . . ." (Compl. ¶ 3). In addition, Plaintiff alleges generally other violations of his constitutional rights against self-incrimination as guaranteed by the Fifth Amendment and loss of his physical liberty. (Compl. ¶ 47). Apparently, these three separate allegations form Plaintiff's series of deprivations.

The latter two allegations—violation of Fifth Amendment rights and loss of physical liberty—do not help Plaintiff's cause on when the statute of limitations began to run. Plaintiff's potential loss of physical liberty stems from his detainment following his unreasonable seizure. (Compl. ¶ 39). Since the two occurred close in timing, loss of physical liberty will not affect the determination of the accrual date for his cause of action. Plaintiff has failed to provide a date for either of these events. However, the arrest and detaining occurred prior to his termination from employment on November 13, 2003.

Plaintiff's second generally alleged potential violation that formed his alleged series of deprivations is the violation of his Constitutional rights against self-incrimination as guaranteed by the Fifth Amendment to the United States Constitution. Plaintiff indicates that he was required by his employment to answer questions truthfully. After answering his supervisors truthfully about receiving stolen property, these statements were used in a subsequent criminal prosecution.[4] (Compl. ¶ 76-78). Plaintiff fails to name the supervisors that interrogated him as

---

[4] Plaintiff does not indicate how the truthful statements he made were used in an incriminating way against him. This is puzzling since Plaintiff contends that he was innocent and, in fact, a jury found him innocent. Plaintiff fails to provide information on when this subsequent criminal prosecution occurred. Plaintiff does not provide a transcript of the

defendants. Plaintiff does not allege that Sergeant Mathias nor Sergeant David Griffith were the supervisors that questioned him. Since the named Defendants are not those who potentially caused violation of Plaintiff's right against self-incrimination, this claim cannot be part of the alleged series of deprivations. *See McKinley v. City of Mansfield*, 404 F. 3d 418, 431 (6th Cir. 2005) (stating Plaintiff must show "that the named defendants are proper defendants, i.e., that they caused the Fifth Amendment violation in question.").

Further, Plaintiff fails to cites case law indicating that a series of deprivations changes the above cited controlling law—that the statute of limitations begin to run when Plaintiff knew or should have known the act that has caused the harm has occurred. For a continuing violation to exist:

> First, the defendants' wrongful conduct must continue after the precipitating event that began the pattern . . . . Second, injury to the plaintiff must continue to accrue after that event. Finally, further injury to the plaintiff [] must have been avoidable if the defendants had at any time ceased their wrongful conduct.

*Tolber v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 940 (6th Cir. 1999). *See also*, *Paschal v. Flagstar Bank,* 295 F.3d 565, 572 (6th Cir. 2002). "[A] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Tolbert*, 172 F. 3d at 940 (*quoting National Advertising Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991)). Passive inaction does not support a continuing violation theory. *Id.*; *Paschal*, 295 F.3d at 573.

From the stated allegations, Plaintiff cannot show a series of constitutional deprivations that formed a continuing violation. Although Plaintiff may have been unjustly arrested, the fact that ill effects may have occurred following the arrest does not indicate a continuing violation.

---

prosecution, which would indicate the substance and the date of the potential violation.

Construing the Complaint in the light most favorable to the Plaintiff, it is impossible to view the Defendants' actions as a continuing violation, because Plaintiff does not allege that any specific conduct of the named Defendants continued after his arrest.

The statute of limitations for Plaintiff's § 1983 cause of action began to run when the Plaintiff knew, or had reason to know, that the act providing the basis of his injury had occurred. Defendants' unreasonable seizure under the Fourth and Fourteenth Amendment is conditioned upon Plaintiffs potentially unlawful arrest. Therefore, the limitations period for Plaintiff's § 1983 claim based on unreasonable seizure began to run at the time he appeared before examining magistrate.[5] *Wallace*, 127 S. Ct. at 1097; *Fox v. DeSoto*, 489 F.3d 227, 233-35. Because Plaintiff has not provided the date for appearance before examining magistrate, the date of termination from employment will suffice. Termination should have alerted the typical Plaintiff that a potential harm to his rights had occurred. At the latest, the date of accrual was November 13, 2003.

Plaintiff had two years to bring his claim from the date of accrual. *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003) (*citing Brown v. Pendleton*, 869 F.2d 989 (6th Cir. 1989)(*en banc*)). Plaintiff first filed his § 1983 claim in state court on September 14, 2006.[6] (Pl.'s Mem. in Opp. at 4). This filing occurred outside the two-year window provided for by the statute of limitations. Plaintiff's action should have been time-barred when he filed in state court.

---

[5] Plaintiff does not indicate when he was arrested nor when he appeared before examining magistrate in the Complaint. He was terminated on Nov 13, 2003. This provides a frame of reference but does not allow the court to know the exact accrual date.

[6] Plaintiff did not allege that he had filed a claim in state court. The only information pertaining to this allegation is found in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss. Plaintiff does not indicate what causes of action were filed in this state case.

Therefore, the Ohio Savings Statute does not apply, and his § 1983 causes of action, filed on August 16, 2007, must be dismissed for falling outside the statute of limitations.

**B.     Count III – Entrapment; Count IV – Malicious Prosecution; Count VI – Use of Coerced Statements; and Count VII – Intentional Infliction of Emotional Distress**

Plaintiff also brings four separate claims: entrapment, malicious prosecution, use of coerced statements, and intentional infliction of emotional distress. Plaintiff does not allege that any of these cause of actions are grounded in any federal statutes, nor does he allege any basis for a cause of action for entrapment or use of coerced statements. Although not alleged, these claims rely on pendent jurisdiction. Because all the federal claims against Defendants have been dismissed prior to trial, the Court hereby dismisses the pendent state claims against those Defendants without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *Kurz v. State of Michigan*, 548 F.2d 172, 175 (6th Cir. 1977) *cert. denied*, 434 U.S. 972 (1977).

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss all counts. Counts III, IV, VI, and VII shall be dismissed without prejudice.

The Clerk shall remove Document 4 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED**

  /s/ George C. Smith
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**